IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| PEKIN INSURANCE COMPANY,<br><br>   Plaintiff,<br><br>vs.<br><br>TYSA, INC.,<br><br>   Defendant. | **No. 3:05-cv-00030-JEG**<br><br><br>**ORDER ON MOTIONS FOR<br>SUMMARY JUDGMENT** |

This matter comes before the Court on cross-motions for summary judgment filed by Plaintiff Pekin Insurance Company (Pekin) and Defendant Tysa, Inc. (Tysa), and related motions to strike Tysa's response to Pekin's statement of material facts and to strike the affidavit of Michael Gaul.  Pekin is represented by Robert Chemers and William Bush.  Tysa is represented by David Millage.  The parties requested oral argument, and a hearing was held on July 14, 2006.  The matter is fully submitted and ready for ruling.

## SUMMARY OF MATERIAL FACTS

Pekin is an Illinois insurance company with its principal place of business in Pekin, Illinois.  During all times relevant to this action, Pekin was licensed to conduct insurance business in Iowa.  Michael Gaul (Gaul) owns Tysa, an Iowa corporation with its principal place of business in Davenport, Iowa.  Tysa distributes personal safety and protection equipment from manufacturers to other distributors who, in turn, sell these goods to consumers.  Tysa does not manufacture products or sell products directly to the public, nor does it modify the products by repackaging, re-labeling, or otherwise.

Tysa carried property insurance for its two Davenport locations, an office and warehouse, from 1993 to 2003.  In June 2003, Gaul contacted Nelson Brothers Schroeder Insurance (Nelson

Brothers) about purchasing a liability policy for Tysa.  Gregory Nelson (Nelson) testified in his deposition that Gaul was not interested in purchasing product liability coverage.

Nelson submitted an application for insurance coverage to Pekin.  Pekin initially rejected Tysa's application but approved another application made under the "Commercial Lines" program.  Tysa was insured under Policy CL0019617-0 issued by Pekin from July 25, 2003, to July 25, 2004.  The initial contract was renewed for an additional year, until July 25, 2005.

Pekin claims the policy did not provide any products liability coverage for products Tysa distributed but covered only products manufactured by Tysa or products on which Tysa placed its name.  Since Tysa did not manufacture any products, Tysa paid Pekin a small $347 annual premium for "products-completed operations" coverage.  According to Pekin, a nominal premium was charged because, although Tysa did not manufacture any products at the time, Gaul could not guarantee that Tysa would not manufacture something or place its name on products in the future.  Later, Tysa did place its name on a twin-line hose product.

The Pekin policy contains an endorsement titled  "Limitation of Coverage to Designated Premises" that states,

> **Limitation of Coverage to Designated Premises or Project**
> This endorsement modifies insurance provided under the following:
> Commercial General Liability Coverage Part.
> **Schedule**
> . . . .
> This insurance applies only to "bodily injury," "property damages,"
> "personal injury," "advertising injury" and medical expenses arising out of:
> 1.    The ownership, maintenance or use of the premises shown in the
> Schedule and  operations necessary or incidental to those premises; or
> 2.    The project shown in the Schedule.

Tysa is a defendant in numerous lawsuits pending in Mississippi, Texas, and Ohio, some of which are class actions, brought by plaintiffs claiming injuries from silica exposure.[1]  These plaintiffs work in various heavy industries or trades, including construction, steel mills, and chemical plants.  The plaintiffs allege that the requirements of their jobs caused them to be exposed to respirable silica (crystalline silica or silicon dioxide) and that the defendants, including Tysa, are liable for selling products that did not adequately protect the plaintiffs from exposure to respirable silica.

These plaintiffs seek to recover from Tysa and over 150 other defendants damages for a lung ailment or diagnosis of silicosis or mixed dust pneumoconiosis.  Tysa tendered the defense of these lawsuits to Pekin, and Pekin claims it accepted that tender of defense subject to a reservation of its rights and the rights of Tysa.

Pekin is providing a defense but claims there is no coverage for the claims asserted against Tysa because the "Limitation of Coverage" endorsement restricts the policy and does not provide full products coverage.  Instead, the endorsement limits coverage to injury arising from the "ownership, maintenance or use" of Tysa's two business locations in Davenport, Iowa.  Since the injury alleged in the underlying lawsuits did not occur on or relate to the Davenport property, Pekin claims the protections of the policy were not triggered.  Pekin notes that the initial policy and renewal both included the endorsement and insured against identical risks.  The renewal policy was terminated July 25, 2005.

---

[1] Pekin's Statement of Material Facts names 44 lawsuits brought by more than 2,000 plaintiffs in Mississippi and Texas and 80 lawsuits pending in Ohio brought by more than 90 plaintiffs.  Tysa claims many of these lawsuits have been dismissed.  The Court will refer to these cases as the "underlying litigation" or the "silica litigation."

Pekin filed a Complaint in this Court on March 21, 2005, seeking a declaratory judgment that it has no duty to defend Tysa under the terms of the policy.  Should such relief be granted, Pekin also requests an award of the costs of defending Tysa in the silica litigation.  Jurisdiction is premised upon 28 U.S.C. § 1332, in that Pekin is an Illinois corporation and Tysa is an Iowa corporation, and the amount in controversy exceeds $75,000.  Venue is premised upon 28 U.S.C. § 1391, as Tysa is a resident of the Southern District of Iowa.

The parties have fully briefed their cross-motions for summary judgment now before the Court.

## APPLICABLE LAW AND DISCUSSION

## I.      RELATED MOTIONS

Pekin moved to strike Tysa's response to Pekin's statement of material facts and moved to strike the affidavit of Michael Gaul.  Because these motions address the record the Court will consider in ruling on the summary judgment motions, they are considered first.  Wells Dairy, Inc. v. Travelers Indem. Co. of Ill., 241 F. Supp. 2d 945, 956 (N.D. Iowa 2003).  These are evidentiary questions, procedural in nature, and therefore are governed by federal law.

### A.      Motion to Strike Tysa's Response

Under Local Rule 56.1(a)(3), Pekin submitted a statement of undisputed facts in support of its summary judgment motion, which it asserts is based on admissions made in Tysa's Answer.  Pekin claims Tysa's response to its statement of facts "makes numerous averments inconsistent with prior judicial admissions" and requests that Tysa's response be stricken to the extent that it contradicts its Answer.

Specifically, Pekin objects to Tysa's denial of paragraph twelve of Pekin's statement of facts.  That paragraph states,

4

> Tysa tendered the defense of the various individual, multiple plaintiff and class action lawsuits to Pekin and Pekin accepted that tender of defense subject to a reservation of its rights.  The rights of Tysa were reserved as well.  While Pekin is providing a defense, it is Pekin's contention that there is no coverage for the claims asserted against Tysa in the various underlying actions . . . .

Tysa denied this averment in its response.  Pekin correctly notes that paragraph twelve is identical to paragraph fifteen of its Third Amended Complaint.  In its Answer to the Third Amended Complaint, Tysa admitted that Pekin is providing a defense but denied that there is no coverage for the claims asserted.  Pekin did not make any response to the allegations that Tysa tendered the defense and that Pekin accepted the tender subject to a reservation of rights.

Federal Rule of Civil Procedure 8(d) provides that, in general, averments in a pleading are admitted if not denied in the responsive pleading.  Accordingly, Pekin asserts that Tysa's general denial of paragraph twelve of the statement of facts is precluded by its partial admission of an identical statement in the Third Amended Complaint and that the latter admission was accomplished through Tysa's failure to deny portions of that statement in its Answer.

Tysa construes its response to paragraph twelve of the statement of facts as a denial that there was no coverage for the claims asserted against it.  Tysa notes that in response to paragraph fifteen of the Third Amended Complaint, it admitted the allegation but denied there was no coverage for the claims asserted.  Therefore, it argues that its position has been consistent throughout the litigation.

Tysa's answer to paragraph fifteen of the Third Amended Complaint does neglect to mention the specific allegations noted by Pekin.  However, the Court finds it is generally immaterial whether it grants the motion and deems these statements admitted because Tysa does not contest that Pekin accepted Tysa's defense subject to a reservation of rights.  Tysa argues

that the reservation of rights should not be given effect due to timeliness and other issues to be discussed below.  Thus while Tysa has perhaps used imprecise language in its Answer, it has not made an averment inconsistent with a prior judicial admission.  Accordingly, the motion to strike is denied.

### B.    Motion to Strike Gaul Affidavit

Pekin asserts that Gaul's affidavit should be stricken because it does not comply with Federal Rule of Civil Procedure 56, which requires affidavits made in support or opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e); see also Doza v. Am. Nat'l Ins. Co., 314 F.2d 230, 232 (8th Cir. 1963) ("When affidavits are offered in support of a motion for summary judgment, they must present admissible evidence, and must not only be made on the personal knowledge of the affiant, but must show that the affiant possesses the knowledge asserted.") (quoting Sprague v. Vogt, 150 F.2d 795, 800 (8th Cir. 1945)).

According to Pekin, the Gaul affidavit does not contain facts based on his personal knowledge but merely makes conclusory statements without adequately establishing Gaul's personal knowledge of the facts or his competency to testify thereto.  Pekin takes issue with Gaul's statement as to what he "believes" the Pekin policy covers and what Nelson Brothers "knew," calling such statements inadmissible and conclusory.  Tysa counters that the affidavit identifies Gaul as the president of Tysa and the person with responsibility to procure the insurance needed for the company, which establishes his competence to testify to the matters contained in the affidavit.

6

Affidavits that do not meet the standards of Rule 56 must be disregarded on a motion for summary judgment.  Brooks v. Tri-Systems, Inc., 425 F.3d 1109, 1111 (8th Cir. 2005) (inadmissible statements in affidavit "may not be used to support or defeat a motion for summary judgment").

The Court indicated to counsel at oral argument that it would likely deny the motion to strike.  Subsequent review of the affidavit has not altered that view.  Any defects are best addressed by reducing the weight accorded to the affidavit and not by striking the document in its entirety.  See Maytag Corp. v. Electrolux Home Prods., Inc., 448 F. Supp. 2d 1034 (N.D. Iowa 2006) (finding it unnecessary to strike when court can simply disregard inadmissible portions); see also Sholl v. Platform Advertising, Inc., 438 F. Supp. 2d 1303, 1307 (D. Kan. 2006) ("the Court ordinarily does not strike affidavits but simply disregards those portions which . . . do not comply with Rule 56(e)"); Edwards v. Texas-New Mexico Power Co., 259 F. Supp. 2d 544, 546 (N.D. Tex. 2003) (denying motion to strike; rather than strike portions of affidavit, "court will give the summary judgment evidence whatever weight it may deserve").  Accordingly, both motions to strike are denied.

## II.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law." Fed. R. Civ. P. 56(c).  A summary judgment motion should be interpreted by the trial court to dispose of factually unsupported claims and defenses.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986); Matsushita Elec. Indus. v. Zenith Radio Corp.,

7

475 U.S. 574, 586-87 (1986).  Therefore, the trial judge is not to weigh the evidence and determine the truth of the matter but rather to determine whether there is a genuine issue for trial.  Id. However, the Court is bound to view the facts in the light most favorable to the nonmoving party and to give that party the benefit of any reasonable factual inferences.  See, e.g., Girten v. McRentals, Inc., 337 F.3d 979, 983 (8th Cir. 2003).

The moving party initially must make a showing of the basis for its motion and the portions of the record that support the party's assertion that there is no issue of material fact. Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992) (citing Celotex, 477 U.S. at 323).  When the moving party has carried its initial burden, the nonmoving party must proffer specific facts demonstrating the existence of a genuine issue for trial and may not rely on mere allegations. Vaughn v. Roadway Express, Inc., 164 F.3d 1087, 1089 (8th Cir. 1998) (citing Celotex, 477 U.S. at 324).  The nonmoving party must make a satisfactory showing on every element of its case for which it has the burden of proof at trial.  Wilson v. Sw. Bell Tel. Co., 55 F.3d 399, 405 (8th Cir. 1995); see also Celotex, 477 U.S. at 322.  "[T]o survive the defendant's motion, [the plaintiff] need only present evidence from which a jury might return a verdict in his favor.  If he does so, there is a genuine issue of fact that requires a trial."  Anderson, 477 U.S. at 257.

"The interpretation and construction of insurance policies is a matter of law, and therefore, issues involving the duty to defend are particularly amenable to summary judgment." Reliance Ins. Co. v. Shenandoah South, Inc., 81 F.3d 789, 791 (8th Cir. 1996).

## III.   CROSS MOTIONS FOR SUMMARY JUDGMENT

The summary judgment motions of both parties address essentially the same arguments and legal contentions, and the briefing is repetitive.  Accordingly, both motions are analyzed simultaneously.

This case arises under the Court's diversity jurisdiction and requires the application and interpretation of Iowa law, consistent with the decisions of the Iowa Supreme Court. <u>Rucci v. City of Pacific</u>, 327 F.3d 651, 652-53 (8th Cir. 2003).  If the Iowa Supreme Court has not addressed a pertinent issue, the Court must endeavor to determine how the state supreme court would handle an issue, guided by the decisions of the lower appellate court. <u>Id.</u>

The issues before the Court can be bifurcated as follows:  Whether the silica lawsuits triggered Pekin's duty to defend under the policy, and, if there is no duty to defend, whether Pekin can recover its defense costs incurred prior to the coverage determination.

## A.   Pekin's Duty to Defend

This case involves a commercial general liability insurance policy.  Such policies generally include two types of coverages or exposures:  "premises-operations" and "products-completed operations."  20-129 Appleman on Insurance Law and Practice § 129.1 (2nd ed. 2006).  Premises-operations coverage involves the insured's liabilities arising from ownership of land or buildings (the "premises") and its ongoing operations. <u>Id.</u>  Products-completed operations coverage involves the liabilities of the insured that correspond to products that the insured manufactures, distributes, or sells. <u>Id.</u>

The construction and interpretation of insurance policies are questions of law, to be decided by the Court. <u>Essex Ins. Co. v. Fieldhouse, Inc.</u>, 506 N.W.2d 772, 775 (Iowa 1993). The intent of the parties controls and is determined by the language of the policy itself unless the policy is ambiguous. <u>Id.</u>

"[A]n insurance policy prepared by the insurer must be liberally construed in favor of the insured, and if any relevant provision is ambiguous it is to be weighed in favor of the latter." <u>Youngwirth v. State Farm Mut. Auto. Ins. Co.</u>, 140 N.W.2d 881, 883 (Iowa 1966).  However, the

policy is a written contract, and therefore the Court's primary concern is the intent of the parties.

Id.  The language of insurance contracts is to be given its "plain, ordinary and popular meaning."

Id.  "One of the [established rules for the interpretation of insurance contracts] is that the court

should ascertain what the insured, as a reasonable person, understood the policy to mean, not

what the insurer actually intended."  Goodsell v. State Auto. and Cas. Underwriters, 153 N.W.2d

458, 461 (Iowa 1967).

Both parties agree the general liability policy at issue here includes products-completed

operations coverage and an endorsement that limits coverage to the "ownership, maintenance or

use" of Tysa's two Davenport locations.  See Essex Ins. Co., 506 N.W.2d at 776 ("In general, an

insurance contract includes the policy form along with the declarations and endorsements.").

The parties disagree as to the effect of the endorsement.  Pekin claims the endorsement applies to

the entire commercial general liability policy, including the premises-operations and products-

completed operations portions.  Tysa claims the endorsement applied only to the premises-

operations portion of the policy, not the products-completed operations portion, leaving full

products coverage intact.  Tysa agrees that the injuries complained of in the underlying lawsuits

did not occur on or have anything to do with the two locations listed in the policy, but again, it

maintains that the locational limitation in the endorsement applies only to the premises-

operations portion of the policy.

Tysa directs the Court to paragraph fourteen of the commercial general liability portion

policy, which defines "products-completed operations hazard" to include "all 'bodily injury' and

'property damage' occurring away from premises you own or rent and arising out of 'your

product' or 'your work'" with certain exceptions.  Paragraph seventeen defines "your product"

as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by: (1) You."

The other relevant portion of the policy is the endorsement, titled "Limitation of Coverage to Designated Premises," which states, "This endorsement modifies insurance provided under the following: Commercial General Liability Coverage Part . . . This insurance applies only to 'bodily injury,' 'property damages,' 'personal injury,' 'advertising injury' and medical expenses arising out of: . . . [t]he ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises."

Tysa asserts that the policy clearly includes coverage for bodily injury, occurring away from Tysa's premises, for products Tysa sold or distributed.  It further states that the definition of products-completed operations coverage precludes the application of the endorsement to that portion of the policy because it would not make sense to define a coverage as applicable to injury occurring away from the premises and then use an endorsement to limit that coverage to the premises.  Tysa also claims the endorsement does not mention the products-completed operations portion of the policy and should not be construed to limit that portion of the policy under the rule that insurance coverage exclusions are interpreted narrowly against the insurer. Johnson Equip. Corp. of Iowa vs. Indus. Indem., 489 N.W.2d 13, 16 (Iowa 1992).

Nelson did testify that "products-completed operations coverage" is typically included in general liability policies; but in Tysa's case, the endorsement was used to limit that standard feature.  Nelson then explained that the additional premium for products-completed operations coverage pertained to products that Tysa manufactured or put its name on, items not covered by the premises-operations portion of the policy.

In Central Bearings Co. v. Wolverine Insurance Co., 179 N.W.2d 443 (Iowa 1970), the Iowa Supreme Court construed a premises-operations provision pertaining to "the ownership, maintenance or use of the premises" and "operations necessary or incidental" thereto – language identical to the provisions of the Tysa policy endorsement.  The insured sold a steel cable to a customer, and the cable broke during use two months later and killed the customer.  Id. at 444-45.  The estate sued the insured, and the insurer declined the tendered defense.  Id.  The insured had purchased only premises-operations coverage, not products-completed operations coverage.  Id.

The court found the language was not ambiguous and determined that a "reasonable person would understand the policy coverage purchased meant the insured was not covered for loss if the 'accident' with concomitant damage to a victim occurred away from the premises and after the operation or sale was complete."  Id. at 449.

The insured argued that premises-operations coverage is broader than products liability coverage and such coverage may overlap.  Id. at 448.  The court rejected that reasoning and found that the coverages in that case were intended to be mutually exclusive and denied coverage.  Id.  Under this rule, Pekin claims coverage is excluded because the "ownership, maintenance or use" language is exactly what is included in the endorsement here.  Therefore the insurance contract is not ambiguous, and it provides no coverage because the injury in the underlying litigation did not involve products Tysa manufactured or placed its name on, and the injury occurred away from Tysa's two Davenport locations.

Tysa claims reliance on Central Bearings is misplaced because the insured there was not issued coverage under the products-completed operations portion of the policy.  Further, it claims the holding that the different policy provisions are mutually exclusive reinforces its prior

contention that Pekin's reasoning would be reading overlapping provisions into the policy, by allowing both the premises-operations and products-completed operations provisions to be limited to the Davenport premises when the definition of the products-completed operations requires that the injury occur away from those premises.

The Eighth Circuit addressed the "ownership, maintenance or use" language in <u>Hagen Supply Corp. v. Iowa National Mutual Insurance Co.</u>, 331 F.2d 199 (8th Cir. 1964).  There, the court held that a premises-operations policy covering bodily injury from accidents related to the ownership, maintenance, or use of the premises did not cover a claim for bodily injury sustained by the use of the insured's product sent by mail to a third party.  The court noted,

> In many cases involving products, there are acts or omissions that might subject a manufacturer or seller to liability.  To name a few, failure to warn, defective workmanship, negligent design, illegal sale, misrepresentation, inadequate testing, inherently dangerous objects – all which relate to acts or omissions occurring in the manufacturer's or seller's business operation, occurring on his premises, and occurring prior to delivery of the product to the consumer.  Certainly there would be little need to ever purchase 'Products' coverage if the 'Premises-Operations' clause was designed to cover the foregoing acts or omissions which result in accidents off the premises and after control has been relinquished.

<u>Id.</u> at 202-03.  According to Pekin, these cases support its claim because Tysa similarly purchased general liability insurance subject to an endorsement limiting coverage to the "ownership, maintenance or use" of the two Davenport locations; a matter wholly unrelated to the silica litigation.

According to Tysa, the insured in <u>Hagen</u> had only purchased premises-operations coverage, and the court noted that the off-premises injury would have been covered by the products-completed operations hazard had the insured purchased that coverage.  Therefore, Tysa claims the <u>Hagen</u> case is inapplicable because the insured conceded that it did not have products

coverage, but here Tysa contends that it does have products coverage because Tysa's policy contained premises-operations and products-completed operations coverages.

Applying the standard rules governing the interpretation and construction of insurance contracts, the Court finds that the endorsement clearly applies to the "commercial general coverage part" of the policy, which includes both the premises-operations and products-completed operations coverages.  Tysa has itself demonstrated knowledge of this distinction:  In its discussion of premium payments, Tysa explains its understanding that "commercial general liability" coverage includes premises-operations coverage and products-completed operations coverage (stating that the total commercial general liability premium comprises charges for premises and products premiums).

Both parties appreciate that the endorsement conflicts with the body of the commercial general liability policy.  However, as Pekin notes, any conflict between the endorsement and the body of the policy must be resolved in favor of the endorsement.  Motor Vehicle Cas. Co. v. LeMars Mut. Ins. Co. of Iowa, 116 N.W.2d 434, 436 (Iowa 1962) (the provision of the endorsement held to prevail in an irreconcilable conflict between the policy and endorsement).

Thus, the remaining issue is whether, because the coverages are not overlapping, the effect of the endorsement as applied to the products-completed operations coverage (which is defined as including an injury away from the premises) renders the insurance contract ambiguous.

"Ambiguity exists when, after application of principles of contract interpretation, a genuine uncertainty remains as to which one of two or more meanings is the proper one."  Kibbee v. State Farm Fire and Cas. Co., 525 N.W.2d 866, 868 (Iowa 1994).  "A mere disagreement between the parties as to the meaning of policy language does not establish an ambiguity."  Id.  "Only when the policy language is susceptible to two reasonable interpretations do we find

14

an ambiguity." Id. "We give words their ordinary meaning 'to achieve a practical and fair inter-
pretation.'" Id. (quoting Cent. Bearings Co., 179 N.W.2d at 445). "We do not indulge in a
strained or unnatural interpretation of policy language merely to find ambiguity." Id. at 868-69.

Tysa argues that it was charged a premium for products liability coverage, and such
coverage exists under the policy to require Pekin to defend it in the underlying litigation. Pekin,
however, is not asserting that Tysa has no products liability coverage, it instead asserts that the
products liability coverage is limited to circumstances where Tysa manufactures a product or
places its name on a product. While Tysa suggests this is simply an attempt to justify charging
Tysa a premium for products coverage when it claims in this litigation no such coverage exists,
Tysa did place its name on a twin-line hose product.

Further, Tysa asserts that Pekin's logic fails because it claims coverage exists for
products Tysa manufactured, but if such injury occurs away from the premises, by Pekin's
construction of the endorsement, no coverage would lie. The Court finds Tysa misapprehends
the clear import of the endorsement. As previously noted, Pekin does not claim Tysa has no
products liability coverage, nor does it claim every injury must occur on the premises named in
the endorsement in order to be covered. The endorsement limits coverage to injuries that
"*arise[] out of* [] The ownership, maintenance or use of the premises" not injuries that *occur
on* the premises.

Counsel for Pekin in oral argument provided several examples of the types of claims that
would be covered under Tysa's existing products liability coverage. If Tysa manufactures a
product, and that product later causes an injury (of the type included in the policy) away from the
premises, then that injury could be said to arise from the ownership, maintenance, or use of the
premises because the product was manufactured there, but the injury would still occur away from

the premises, consistent with the general notions of products-completed operations coverage. Further, as Pekin notes, if the endorsement did not apply to the products-completed operations portion of the policy, it would only apply to the premises-operations portion, which, by definition, includes the "premises." Therefore, under Tysa's suggested interpretation, the endorsement would not modify a term of the insurance policy. The Court finds such an interpretation untenable and unreasonable. As previously noted, the terms of the endorsement apply to both types of CGL coverages. What remains is not a total absence of products liability coverage, but rather, coverage for products manufactured on the premises, or bearing the Tysa name, where the claimed fault is in design, manufacature, or failure to warn, all of which occur on the premises, even though the actual injury may occur elsewhere.

Accordingly, the Court finds that the CGL policy and endorsement are not ambiguous, and a reasonable insured would understand that the coverage provided is limited to specified types of injury arising from the ownership, maintenance, or use of the premises.

Having construed and interpreted the insurance contract, the Court now turns to Pekin's duty to defend under that contract. An insurer's duty to defend arises "whenever there is potential or possible liability to indemnify the insured based upon the facts appearing at the outset of the case." Wells Dairy, 241 F. Supp. 2d at 962 (citing First Newton Nat'l Bank v. Gen. Cas. Co. of Wis., 426 N.W.2d 618, 623 (Iowa 1988)). Accordingly, it is appropriate to begin with the allegations of the complaint or petition. Essex Ins. Co., 506 N.W.2d at 774.

An insurer's duty to defend is broader than its duty to indemnify. Stine Seed Farm, Inc. v. Farm Bureau Mut. Ins. Co., 591 N.W.2d 17, 18 (Iowa 1999). Courts must look to the allegations of the complaint and determine if the facts "bring the claim within the liability covered by

the policy." <u>Id.</u>  The legal terminology employed by the plaintiff is "relatively unimportant" in comparison to the factual allegations.  <u>Id.</u>

Under the Court's construction, coverage would lie only if the products involved in the silica litigation were manufactured by Tysa or bore the Tysa name or logo.  The only such product mentioned in the record before this Court is the twin-line hose product bearing the Tysa name, and no one has asserted that it is involved in the underlying litigation.  The Plaintiffs seek to hold Tysa liable based on its distribution of other manufacturers' safety equipment.  As previously noted, such claims are not within the contemplation of the policy issued by Pekin.

"The insurer has no duty to defend if after construing both the policy in question, the pleadings of the injured party and any other admissible and relevant facts in the record, it appears the claim made is not covered by the indemnity insurance contract."  <u>Weber v. IMT Ins. Co.</u>, 462 N.W.2d 283, 285 (Iowa 1990).  Accordingly, the Court finds no coverage for the claims at issue, and Pekin's duty to defend is extinguished.

### 1.   Reasonable Expectations

Although Tysa claims it clearly purchased products-completed operations coverage that applies to the products it distributed, it also contends that if the Court finds, as it has, that the terms of the policy itself do not provide for that coverage, the Court should still find that the reasonable expectations doctrine requires Pekin to cover the underlying claims.

The Iowa Supreme Court recognized the doctrine of reasonable expectations as a response to the strictures of adhesion contracts, such as insurance policies.  <u>Rodman v. State Farm Mut. Auto. Ins. Co.</u>, 208 N.W.2d 903 (Iowa 1973); <u>Baker v. Grinnell Mut. Reins. Co.</u>, 475 N.W.2d 672, 674 (Iowa Ct. App. 1991).  The doctrine requires the Court to ignore a policy exclusion that "is bizarre or oppressive," that "eviscerates terms explicitly agreed to" by the

parties, or "eliminates the dominant purpose of the transaction."  Baker. 475 N.W.2d at 674.

When at least one of these conditions applies, the Court will not frustrate the reasonable expec-

tations of the insured "even though a painstaking study of the policy provisions would have

negated those expectations."  Id.

Before considering those criteria, however, the Court "must find either that the policy is

'such that an ordinary layperson would misunderstand its coverage, or there must be circum-

stances attributable to the insurer which would foster coverage expectations."  Essex Ins. Co.,

506 N.W.2d at 777.

As the Court's construction of the policy endorsement indicates, a reasonable person

would understand that the endorsement limits the entire commercial general liability coverage

part of the policy, not just the premises-operations portion.  Accordingly, here the Court also

finds that a layperson would understand that to be the meaning of the policy.

Tysa claims the evidence of the exchanges of information surrounding the issuance of the

policy foster coverage expectations because "Nelson Brothers sold products liability coverage

through Pekin, [] Gaul was interested in purchasing products liability coverage and thought that

he had purchased products liability coverage," and a premium was charged for products liability.

Again, the Court has already explained that Pekin is not asserting a total absence of products

liability coverage, only that the coverage was limited by an endorsement.  Accordingly, asser-

tions about products liability coverage do not create an expectation of coverage requiring the

application of the reasonable expectations doctrine, especially when the policy includes some,

though limited, products liability coverage.

Even if the Court were to pass the two preconditions and apply the test for reasonable

expectations, there is no justification for application of the doctrine to the facts of this case.  The

endorsement is not bizarre or oppressive as construed by the Court in the analysis above.  As

Pekin notes, Tysa's construction of the policy would mean that the endorsement does not limit

any portion of the policy, because the premises-operations coverage, by definition, relates only

to the two Davenport locations.  An endorsement that does not limit any portion of the policy

would be bizarre, but that is not the construction adopted in the present case.

Neither does the endorsement eviscerate a term explicitly agreed to or eliminate the dom-

inant purpose of the transaction.  Gaul claims the purpose of switching insurance through Nelson

Brothers was to obtain products liability coverage because Tysa's previous insurer did not offer

such coverage.  Tysa also continues to assert that Tysa thought it purchased products liability

coverage.  Tysa did purchase products liability coverage, albeit limited by an endorsement.  This

does not "eviscerate" a term explicitly agreed to, nor does it eliminate the dominant purpose of

the transaction.

Tysa's arguments for application of the reasonable expectations doctrine amount to a

request of the Court to expand its coverage on a general equitable basis.  This is not the function

of the reasonable expectations doctrine.  Clark-Peterson Co., Inc. v. Indep. Ins. Assoc., 492

N.W.2d 675, 677 (Iowa 1992).

### 2.   Estoppel

Tysa asserts in its Resistance that Pekin is estopped from claiming that Tysa did not have

coverage for the silica lawsuits because it defended Tysa for over four months without a reserva-

tion of rights.  In support of this contention, Tysa directs the Court to City of Carter Lake v.

Aetna Casualty and Surety Co., 604 F.2d 1052 (8th Cir. 1979).  "Iowa follows the general rule

that the doctrine of estoppel may not be used 'to bring within the coverage of a policy risks not

covered by its terms, or risks expressly excluded therefrom' [except] when an insurance

company assumes the defense of an action, with knowledge, actual or presumed, of facts which would have permitted it to deny coverage, [in which case] it may be estopped from subsequently raising the defense of non-coverage." Id. at 1059; Westfield Ins. Co. v. Economy Fire & Cas. Co., 623 N.W.2d 871, 879 (Iowa 2001) (same).

In City of Carter Lake, the insurer waited six months after the filing of underlying litigation to disclaim coverage, and the court found its reservation of rights letter was untimely. The insurer had a duty to inform the insured of its position within a reasonable time, and its failure to do so meant it was estopped from asserting a defense of noncoverage. City of Carter Lake, 604 F.3d at 1059.

Pekin argues that a four-month delay in reserving rights in over thirty lawsuits is reasonable and that Tysa's reliance on Carter Lake is misplaced because there the court articulated specific ways in which the insured was prejudiced by the insurer's delay, and Tysa has failed to articulate any ways in which it has been prejudiced in the silica litigation. Further, Pekin asserts that, in the event its reservation of rights was untimely, estoppel would only apply to the lawsuits filed in late October 2004.

Finally, Pekin notes that "[n]either waiver or estoppel may be used to extend coverage where it is expressly excluded in the policy." Rapid Leasing, Inc. v. Nat'l Am. Ins. Co., 263 F.3d 820, 827 (8th Cir. 2001) (applying Iowa law). Pekin asserts that the coverage Tysa seeks is expressly excluded by the endorsement.

Given the nature of the underlying claims and litigation, the four-month delay in asserting a reservation of rights does not alone suggest an essential unfairness or prejudice to Tysa. Unlike the Carter Lake case, this record does not demonstrate any significant prejudice in defending or managing the silica litigation as a result of the delay. In the absence of the unique

20

facts in <u>Carter Lake</u>, this Court finds no basis for the application of the doctrine of estoppel. Accordingly, the Court need not decide if the application of estoppel would extend otherwise excluded coverage.

**B.     Reservation of Rights and Recovery of Defense Costs**

Pekin sent Tysa a letter titled Reservation of Rights on March 11, 2005.  Pekin claims that if this Court finds the policy does not cover the claims in the silica litigation and therefore there is no duty to defend, the reservation of rights letter entitles Pekin to recover the costs it incurred in defending Tysa.  Tysa disputes the availability of recovery of costs before a coverage determination and also claims the reservation of rights letter was untimely.

The parties agree that the Iowa Supreme Court has not dealt with the issue of an insurer's right to recover defense costs incurred before an adjudication of coverage.  The Court must therefore endeavor to determine how the Iowa Supreme Court would rule based on the circum- stances presented here.  Tysa states that this Court should decline to allow such an award in the absence of a specific holding under Iowa law.

Pekin claims the majority rule is to allow an insurer to recover defense costs prior to the coverage determination.  It therefore urges this Court to find that the Iowa Supreme Court would follow the majority rule and hold that an insurance company is entitled its defense costs if it defends the insured under a reservation of rights and the court finds there was no coverage.  Tysa disagrees.  Accordingly, the Court must decide whether the Iowa Supreme Court would permit an insurer to recover fees expended prior to a coverage determination under a reservation of rights letter and, if so, whether the reservation of rights Pekin sent Tysa is effective to permit the recovery of such costs in this case.

21

The cases that have dealt with this issue generally consider whether there was a timely reservation of rights that explicitly included the right to seek recovery of defense costs, whether the insured objected to the reservation, whether the reservation provided specific and adequate notice of the possibility of reimbursement, and whether the reservation of rights was a separate, implied contract or an amendment to the insurance contract.  As a matter of first impression in this jurisdiction, and in projecting the response of the Iowa Supreme Court, it is necessary to examine the approach of various jurisdictions.

"Although not the first court to so hold, the California Supreme Court has given impetus to this approach [allowing an insurer to recover defense costs] in Buss v. Superior Court (Transamerica Insurance Co.)."  4 Bruner & O'Connor on Construction Law § 11.21 (West 2006).  In Buss, the insured tendered defense of a contract and tort action, which all insurers refused except Transamerica.  Buss v. Sup. Ct., 939 P.2d 766, 769 (Cal. 1997).  Transamerica reserved its right to deny coverage and to be reimbursed for defense costs if a court later deter-mined that there was no coverage.  Id. at 770.  Buss issued its own reservation of rights.  Id.

The court distinguished the duty to defend and the duty to indemnify, stating that the duty to indemnify entails the payment of money for claims actually covered, once liability is estab-lished; whereas the duty to defend extends to claims that are only potentially covered and is therefore broader than the duty to indemnify.  Id. at 773.  After considering the characteristics of each duty, the court held that in a "mixed" action (involving covered and uncovered claims), "[a]s to the claims that are at least potentially covered, the insurer may not seek reimbursement for defense costs."  Id. at 775.  "The reason is this.  Under the policy, the insurer has a duty to defend the insured as to the claims that are at least potentially covered.  With regard to defense costs for these claims, the insurer has been paid premiums by the insured.  It bargained to bear

22

these costs.  To attempt to shift them would upset the arrangement."  Id. at 775-76 (noting that this would not be the case if the policy provided for reimbursement).  The court noted that the insured is not unjustly enriched by the provision of a defense because providing a defense is consistent with the insurer's policy obligations.  Id.  A reservation of rights cannot reserve a right of reimbursement if the policy itself does not include a provision for reimbursement, because the insurer has no such right to reserve.  Id.

"As to the claims that are not even potentially covered, however, the insurer may indeed seek reimbursement for defense costs."  Id. at 776.  The court determined California law clearly permits an insurer to recover attorney fees paid in defending against claims for which there was no duty to defend, because the duty to defend does not extend to claims that are not even potentially covered.  Id.  Thus, in an action involving both covered and uncovered claims, the insurer could seek reimbursement for the "[d]efense costs that can be allocated solely to the claims that are not even potentially covered," which the insurer must prove by a preponderance of the evidence.  Id.

The District of Colorado held that an insurer was entitled to reimbursement when the insured did not object to the reservation of rights.  First Fed. Sav. & Loan Ass'n of Fargo, N.D. v. Transamerica Title Ins. Co., 793 F. Supp. 265, 269 (D. Colo. 1992) ("An insurance company may also reserve its right to deny its duty to defend and later recover for any attorney fees paid.").  The reservation of rights included the insurer's ability to deny the duty to defend or indemnify under the policy.  Id.  The insured did not object to the reservation.  Id.  The court found "[A]n insurance company may also reserve its right to deny its duty to defend and later recover for any attorney fees paid."  Id.

The Florida Court of Appeals determined that an insurer is entitled to reimbursement of defense costs when the insurer did not have a duty to defend. <u>Colony Ins. Co. v. G & E Tires & Serv., Inc.</u>, 777 So. 2d 1034, 1039 (Fla. Dist. Ct. App. 2000). The insured had accepted the insurer's offer of defense with a reservation of rights. <u>Id.</u> The court found that once a court determined there was no duty to defend, the insured "ought in fairness make the [insurer] whole." <u>Id.</u> The court also relied on general principles of contract law, stating that the insured cannot accept tendered performance and unilaterally alter the terms upon which the performance is offered. <u>Id.</u> The court noted this "is not a case where the factual potential for coverage imposed a duty to defend until the insurer developed facts showing there was no duty in the particular circumstances." <u>Id.</u> at 1038 n.4. In that situation, the insurer's duty to defend is extinguished going forward from the coverage determination but not retroactively; however, in the case at bar, "there never was any potential for coverage." <u>Id.</u>

The Sixth Circuit Court of Appeals agreed that an insurer may recover the costs of defending underlying litigation, provided the insurer reserves its rights in a timely and explicit manner and gives the insured specific and adequate notice of the possibility of reimbursement. <u>United Nat'l Ins. Co. v. SST Fitness Corp.</u>, 309 F.3d 914 (6th Cir. 2002). The reservation of rights stated that the insurer reserved the right to recover defense costs and fees "on the basis that no duty to defend now exists or has existed." <u>Id.</u> at 916. The court declared that the cases disallowing recovery of defense costs have done so on the basis of defects in the reservation of rights and not on the basis that an insured must expressly agree to reimbursement. <u>Id.</u> at 918. The court noted the general rule that "an insurer is entitled to reimbursement for defense costs when the insurer did not have a duty to defend any of the asserted claims where the insurer 1) timely and explicitly reserves its right to recoup the costs; and 2) provides specific and adequate notice of the

possibility of reimbursement." Id. at 919.  The court found the two criteria met and allowed the insurer to recoup its defense costs because the insured entered into an implied-in-fact contract by accepting the defense subject to the reservation of rights.  Id. at 921.

A dissenting judge found that the reservation was not an implied-in-fact contract but an attempt to unilaterally alter the terms of the insurance policy.  Id. at 925 (Clay, J. dissenting). The insurance policy did not provide for recovery of attorney fees, so the dissent argued that the insured should not be permitted to recover them.  Id. at 924-25 ("Where there is doubt about whether the policy covers claims asserted against an insured, it is in the insurer's interest to mount a defense for the insured, subject to a reservation of rights" which would permit it to withdraw defense or deny coverage later but would not permit a recovery of defense costs).

The Northern District of Ohio recently revisited Sixth Circuit precedent on this issue, noting that, as Pekin asserts, the majority rule is to permit the insurer to recover defense costs if certain criteria are met.  Am. Motorist Ins. Co. v. Custom Rubber Extrusions, Inc., No. 1:05cv2331, 2006 WL 2460861 (N.D. Ohio Aug. 23, 2006).  The court noted that Ohio law distinguishes the duty to defend as separate and distinct from the duty to indemnify and "Ohio courts have held that the duty to defend *may* be broader than the duty to indemnify."  Id. at *6 (emphasis added); cf. Stine Seed Farm, Inc., 591 N.W.2d at 18 ("a duty to defend . . .  *is* broader than the duty to indemnify") (emphasis added).  The court acknowledged the holding of United National permitting an insured to recover defense costs but held that the Ohio courts would likely not extend that framework to permit reimbursement for a judgment paid by the insurer because "[s]tates that permit an insurer to seek reimbursement for *defense* costs already provide a liberal interpretation of an insurer's rights."  Am. Motorist Ins. Co., 2006 WL 2460861 at *7.

The Third Circuit Court of Appeals considered this dilemma while applying Pennsylvania law in <u>Terra Nova Insurance Co. v. 900 Bar, Inc.</u>, 887 F.2d 1213 (3d Cir. 1989). In that case, the court noted "[u]nder Pennsylvania law an insurer has a duty to defend if the complaint alleges facts that support recovery within the policy, at least until the action has been confined to claims that are not covered." <u>Id.</u> at 1216. The court determined that permitting an insured to recover defense costs under a reservation of rights when it is later determined that the injury is not covered is inconsistent with the principles that cause the insured to make the reservation of rights in the first place. <u>Id.</u> at 1219-20. These principles reflect the insured's risk-avoidance motivation when faced with uncertainty as to its indemnification duties: The insured wants to avoid additional exposure from an incompetent defense should it be found to have a duty to indemnify, but the insurer also wants to preserve its right to contest the duty to indemnify if the defense fails. <u>Id.</u> Thus, allowing the insurer to recover defense costs would require the insured to pay for a benefit that inured to the insurer. As the court noted,

> Faced with uncertainty as to its duty to indemnify, an insurer offers a defense under reservation of rights to avoid the risks that an inept or lacka-daisical defense of the underlying action may expose it to if it turns out there is a duty to indemnify. At the same time, the insurer wishes to preserve its right to contest the duty to indemnify if the defense is unsuccessful. Thus, such an offer is made at least as much for the insurer's own benefit as for the insured's. If the insurer could recover defense costs, the insured would be required to pay for the insurer's action in protecting itself against the estoppel to deny coverage that would be implied if it undertook the defense without reservation.

The Pennsylvania courts agree with the Third Circuit's prediction. In <u>LA Weight Loss Centers, Inc. v. Lexington Ins. Co.</u>, the insurer reserved the right to seek reimbursement of defense costs. <u>LA Weight Loss Centers, Inc.</u>, No. 1560, 2006 WL 689109 at *5 (Pa. Com. Pl. March 1, 2006). The insurer argued that the reservation of rights letter allowed it to not only

withdraw from defending the insured or deny coverage but also to be reimbursed for its defense

costs.  Id.  The court instead found that a reservation of rights letter is not a new contract but is

"a mean to assert defenses and exclusions which are already set forth in the policy."  Id. at *6.

Therefore, unless the policy itself permits an insurer to recover defense costs, such a right may

not be created by a reservation of rights letter because that would amount to a unilateral amend-

ment of the policy by the insurer.  Id.

     The Fourth Circuit, applying Maryland law, recently considered this issue where an

insurer sought partial reimbursement for defense costs attributable to noncovered claims.  Perdue

Farms, Inc. v. Travelers Cas. and Sur. Co., 448 F.3d 252 (4th Cir. 2006).  Perdue notified

Travelers of the suit pending against it, and Travelers determined there was potential coverage

that triggered the duty to defend.  Id. at 255.  Travelers defended Perdue for several years under

a reservation of rights which included the right to refuse payment of  judgment, to decline to

defend noncovered claims, and to see reimbursement for defense costs related to noncovered

claims.  Id.

     In Maryland, as in Iowa, the duty to defend is broader than the duty to indemnify.  Id. at

257.  The court noted that Maryland had not previously extended such a right to insurers, stating

"we are unwilling to grant insurers a substantial rebate on their duty to defend."  Id. at 259.  As

the court explained,

> Properly considered, a partial right of reimbursement would thus serve
> only as a backdoor narrowing of the duty to defend, and would appreciably
> erode Maryland's long-held view that the duty to defend is broader than the
> duty to indemnify . . .  A partial right to reimbursement of defense costs
> would moreover undermine the bargain that Maryland courts describe
> insurers reaching with their insureds.  The usual commercial liability policy,
> including the policy that Travelers issued to Perdue, states that the insurer
> has both the "duty" and the "right" to defend its insured.
> . . . .

> The arrangement is beneficial to both parties. "The duty to defend is primarily, of course, for the benefit of the insured," . . . "[a]lthough the type of policy here considered is most often referred to as liability insurance, it is 'litigation insurance' as well, protecting the insured from the expense of defending suits brought against him. []
>
> The insurer, in turn, secures the right to defend "as a mechanism for protecting and minimizing its duty of indemnification." [] "'Faced with uncertainty as to its duty to indemnify, an insurer offers a defense under reservation of rights to avoid the risks that an inept or lackadaisical defense of the underlying action may expose it to if it turns out there is a duty to indemnify.'" [] Taking the arrangement as Maryland has thus characterized it, allowing a partial recoupment of defense costs would significantly tip the scales in favor of the insurer. Under Travelers' proposed rule, liability insurance would all but cease to function as "'litigation insurance,'" [] instead merely providing insureds with an up-front defense whose line-item costs would then be the subject of subsequent litigation.

Id. at 258-259 (internal citations omitted).

The courts in Illinois and Minnesota have explored both sides of this issue. In 1998, the Southern District of Illinois predicted that the Illinois Supreme Court would authorize reimbursement. Grinnell Mut. Reins. Co. v. Shierk, 996 F. Supp. 836, 839 (S.D. Ill. 1998). The court followed the California cases, finding an insurer is entitled to reimbursement if the insurer specifically reserved the right to seek reimbursement and provided the insured with adequate notice of the potential reimbursement. Id. The court concluded that the insurer specifically reserved the right to seek reimbursement and the insured received adequate notice of the reservation. Id. Accordingly, the court held that the Illinois Supreme Court would award the insurer its requested relief. Id.

The Illinois Supreme Court finally had an opportunity to address this issue in 2005 and held that under the reasoning of the California cases, a reservation of rights allows an insurer to unilaterally modify its contract to allow it to recover defense costs if a court later determines no duty to defend existed. Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co., 828

N.E.2d 1092 (Ill. 2005).  The court summarized the case law allowing reimbursement, as relied

on by the Grinnell court, and shared the general observation that courts permitting reimburse-

ment generally do so based on a finding of an implied contract or that the insured was unjustly

enriched by the defense provided.  Id. at 1101.  However, the court found the reasoning of the

minority jurisdictions to be more persuasive, noting the Wyoming decision in Shoshone First

Bank v. Pacific Employers Insurance Co., 2 P.3d 510 (Wy. 2000).  The Shoshone court char-

acterized the reservation of rights as an impermissible unilateral modification of policy coverage.

Id. at 514-15.  The court agreed and further agreed with the Third Circuit in Terra Nova that

when an insurer "pays defense costs pursuant to a reservation of rights, the insurer is protecting

itself at least as much as it is protecting its insured" and therefore the insured is not unjustly

enriched by the defense.  Gen. Agents Ins. Co., 828 N.E.2d at 1103.

> As a matter of public policy, we cannot condone an arrangement where an
> insurer can unilaterally modify its contract, through a reservation of rights,
> to allow for reimbursement of defense costs in the event a court later finds
> that the insurer owes no duty to defend.  We recognize that courts have
> found an implied agreement where the insured accepts the insurer's payment
> of defense costs despite the insurer's reservation of a right to reimbursement
> of defense costs.  However, as stated by the court in America States
> Insurance Co., cited by the Shoshone First Bank court, recognizing such an
> implied agreement effectively places the insured in the position of making a
> Hobson's choice between accepting the insurer's additional conditions on its
> defense or losing its right to a defense from the insurer.

Id. at 1102.

Within our own circuit, cases applying Minnesota and Missouri law lend support for

Tysa's contention that the Iowa Supreme Court would not permit an insured to recover defense

costs incurred before a no-coverage determination extinguished the duty to defend.

The District of Minnesota initially found that an insurer could recover defense costs

where it sent a reservation of rights letter stating it would pay defense costs but resrve the right

to seek fees and costs later.  Knapp v. Commonwealth Land Title Ins. Co., 932 F. Supp. 1169, 1172 (D. Minn. 1996) ("where an insurer has properly met its duty and subsequently successfully challenges policy coverage, it should be entitled to the full benefit of such a challenge and be reimbursed for the benefits it bestowed, in good faith, to its insured").  The court also found that the insured's lack of response to the reservation of rights letter and acceptance of the defense constituted an implied agreement to the reservation of rights.  Id.

Applying Missouri law, the Eighth Circuit has held that when the duty to defend is triggered, the insurer has a duty to defend the insured until a coverage determination is made.  Liberty Mut. Ins. Co. v. FAG Bearings Corp., 153 F.3d 919, 924 (8th Cir. 1998).  Thus, the court did not allow the insurer to recover defense costs incurred before the issue of coverage was decided, holding that "Liberty remained obligated to defend FAG so long as there remained any question as to whether the underlying claims were covered by the policies.  Upon determination . . . that the claims against FAG were therefore excluded from coverage, the district court properly concluded that Liberty's duty to defend FAG in this action expired.  Because we con- clude that Liberty had a duty to defend FAG until such determination was made, we reject Liberty's argument that it is entitled to reimbursement of defense costs."  Id. at 924.

The FAG Bearings case did not mention a reservation of rights.  However, when the Minnesota District court next tackled this issue, it reached a different conclusion in light of FAG Bearings.  Employers Mut. Cas. Co. v. Indus. Rubber Prods., Inc., No. Civ. 04-3839, 2006 WL 453207 (D. Minn. Feb. 23, 2006).  In Employers Mutual, the insurer moved for reimbursement of all defense costs, under the authority of Knapp v. Commonwealth Land Title Insurance Co., 932 F. Supp. at 1171-72.  The court noted that since Knapp, the Minnesota courts had not ruled on the issue, but then looked to the Eighth Circuit's application of Missouri law in FAG

Bearings, as Minnesota and Missouri insurance law are consistent on the relevant issues.

Employers Mutual, 2006 WL 453207 at *5-6.

The court determined that although the insurer included a right to seek reimbursement of defense costs in its reservation of rights letter, the insured did not explicity respond to that reservation and the insurance policy did not mention reimbursement.  Therefore, the court held that under FAG Bearings, "an insurer is not entitled to the reimbursement of defense costs expended prior to the determination of coverage, unless specifically provided for in the insurance policy."  Id. at *6.

While the majority of cases permit an insured to recover defense costs, based on an existence of an implied contract or finding that the insured was unjustly enriched when the insurer provided a defense for claims that were found to be outside the coverage, an examination of the long-standing Iowa jurisprudence regarding the breadth of the duty to defend and the reasonable expectations of the insured convinces this Court that the Iowa Supreme Court would be more persuaded by the Illinois, Minnesota, and Pennsylvania decisions finding that using a reservation of rights to permit recovery of defense costs amounts to a unilateral modification of the policy terms and that, because the duty to defend is broader than the duty to indemnify, the insured is not unjustly enriched when the insurer provides a defense for claims that are at least possibly within the coverage terms, although such claims may later be found to be outside the policy.

Tysa also argued if the Court determines that the Iowa Supreme Court would allow an insured reimbursement, the court would likely impose a requirement that an insured must timely notify the insured and specifically notify the insured that the insurer may seek reimbursement for defense costs.  Tysa claims Pekin would be unable to recover under such a rule because it failed

to provide timely and specific notice of its reservation of rights.  While this Court finds the notice in this case both timely and adequately specific, such a conclusion is unnecessary based upon the Court's conclusion such reimbursement would not generally be allowed.

## CONCLUSION

Pekin Insurance has demonstrated that no genuine issue of material fact exists concerning the terms of the commercial general liability policy it issued Tysa as applied to the claims in the silica lawsuits.  The policy, as modified by the endorsement, limits products liability coverage to claims that are outside those contemplated in the underlying litigation.  The reasonable expectations doctrine does not apply, and there is no basis for application of the doctrine of estoppel. Accordingly, Pekin is entitled to summary judgment on this ground.

Regarding the claim for reimbursement of the costs Pekin incurred in defending Tysa until this coverage determination, the Court concludes the Iowa Supreme Court would follow the reasoning of those cases from Pennsylvania, Illinois, and Minnesota, holding that an insured is not entitled to recover the defense costs incurred prior to a determination of coverage under the policy.  Accordingly, the reservation of rights letter does not obligate Tysa to reimburse Pekin for the defense costs incurred thus far.

Plaintiff's Motion for Summary Judgment (Clerk's No. 57) is **granted in part and denied in part**, as set forth in this Order.  Pekin Insurance Company is not obligated to indemnify Tysa, Inc., in connection with the underlying lawsuits specifically identified in this record, under policy number CL0019617-0.  The claim for reimbursement of defense costs is denied.  Defendant's Motion for Summary Judgment (Clerk's No. 89) is **denied**.

Plaintiff's Motion to Strike Tysa's Response (Clerk's No. 80) and Motion to Strike Affidavit (Clerk's No. 81) are **denied** as set forth above.  The Clerk of Court is directed to enter

declaratory judgment in favor of Plaintiff, Pekin Insurance Company, and against Defendant, Tysa, Inc.

**IT IS SO ORDERED.**

Dated this 27th day of December, 2006.

JAMES E. GRITZNER, JUDGE
UNITED STATES DISTRICT COURT